JAMES M. BORUM v. MINNEAPOLIS, ST. PAUL & SAULT STE.
MARIE RAILWAY COMPANY.[1]

September 18, 1931.

No. 28,283.

[1]Reported in 238 N. W. 4.

*Henry S. Mitchell, John E. Palmer,* and *James L. Hetland,* for appellant.

*Davis, Michel & Yaeger,* for respondent.

DIBELL, J.

The plaintiff sustained an injury while working for the defendant in interstate commerce. He brought an action for damages. Issue was joined. The parties then entered into an agreement for arbitration of all the issues comprehended in the pleadings. The arbitrators awarded the plaintiff $12,500. It was a statutory arbitration. The court confirmed the award. Judgment was entered for the plaintiff, and the defendant appeals.

On December 11, 1928, the plaintiff, Borum, sustained the loss of both legs below the knees while employed as a switchman in the yards of the defendant at Minneapolis. His work was in interstate commerce. He brought suit under the federal employers liability act, 35 St. 65, 45 USCA, § 51, et seq. The arbitrators found the defendant's negligence the proximate cause of the injury. No complaint is made of the finding.

It was a part of the agreement of arbitration that the plaintiff should be paid $12,500 and that such sum should be retained whatever the finding of the arbitrators on the question of liability should be; and that if the decision of the arbitrators was in favor of the plaintiff on the merits they should make an award of $12,500. This was additional to the $12,500 mentioned before. Three arbitrators were chosen by the parties from the bar of Minneapolis and St. Paul. They made their findings and, on a further hearing, supplemental findings, and awarded the plaintiff $12,500.

There are three questions involved:

(1) Whether, under the agreement for arbitration quoted hereinafter, the award was final on all questions, including those of law; in short, whether the award was reviewable in the district court and in this court.

(2) Whether a rule of the company that an application for employment is accepted if not rejected within 30 days after it is made applies and is effective in determining the status of the employe.

(3) Whether the misrepresentation of his age by the plaintiff to obtain employment prevented his recovery of damages when there was no causal connection between his misrepresentation of his age or his physical condition and the injury he received.

The plaintiff sustained his injury on December 11, 1928. He was employed by the defendant in October, 1921, and continued in his employment until his injury. He was first employed by the defendant in 1911 and quit in 1917. He worked for other roads, at least a part of the time, until he came back to the Soo in 1921. He was then 49 years of age. In his application he stated his age to be 38 years. In his application in 1911 he gave his age as 28. He submitted to the usual medical examination in 1921 and was found in good health and acceptable physical condition. He performed his work satisfactorily until his injury. His application was not rejected.

The company had a rule as follows:

"No person inexperienced in railroad work over 35 years, and no experienced person over 45 years, shall hereafter be taken into the service."

Another rule provided:

"Applications for employment in yard service not rejected in thirty days will be considered accepted."

The company had this rule relative to retirement:

"All officers and employees who have attained the age of 65 years shall be retired; provided, however, that the pension board with

the approval of the president, shall have power to retain in the service any officer or employee who has reached the age of 65 years, if in their opinion it is in the interest of the company so to do, but such retention in the service shall not extend beyond the period when such officer or employee shall have attained the age of 70 years."

For convenience in considering the three questions and ease of review we quote the arbitration agreement and the findings substantially in full, with some reference to the testimony.

The agreement of submission was as follows:

"Know All Men:

"That James M. Borum of Minneapolis, Minnesota, herein designated as plaintiff, and Minneapolis, St. Paul & Sault Ste. Marie Railway Company, a railway corporation, having its principal office and place of business at Minneapolis, Minnesota, herein designated as defendant, have agreed to, and do hereby, submit all demands, claims, issues and matters in dispute between them, both as to law and fact set forth and comprehended within the pleadings hereto annexed, to the determination of Matthew M. Joyce of Minneapolis, Minnesota; Harry S. Stearns of St. Paul, Minnesota, and John P. Devaney of Minneapolis, Minnesota; the award of whom, or a majority of whom, being made and reported within forty days from this date to the District Court of the county of Hennepin, the judgment thereon shall be final.

"As part hereof, it is further agreed and stipulated:

"1. That James M. Borum, party hereto and herein designated as plaintiff, suffered injury resulting in the loss of both legs below the knee while acting as a switchman in said railway company's yards at Minneapolis, Minnesota, on the 11th day of December, 1928, which injury is the basis of the action hereinafter referred to and covered by the pleading hereto annexed.

"2. That the nature of defendant's business and of the work which plaintiff was doing at the time of said injury was such as to bring both parties within the Federal Employers' Liability Act, if plaintiff be held an employe of defendant within the meaning of said act.

"3. That the circumstances of the infliction of said injury were such as to make a jury question as to the negligence of defendant, its agents or servants, proximately causing, or contributing to, said injury.

"4. That suit for said injury was duly brought under the Federal Employers' Liability Act as shown by said pleadings; that the question of whether plaintiff was, at the time of said injury, an employe within the meaning of said act and as such entitled to all the benefits and privileges thereof, is in controversy herein; that if he was not at said time an employe within the meaning of said act and entitled to all the benefits and privileges thereof, he has no cause of action against the defendant.

"5. That, irrespective of the question of its legal liability for such injury, defendant has paid to plaintiff the sum of $12,500 on account of said injury; which said sum of $12,500 plaintiff may retain whatever may be the decision herein on the merits and legal questions involved.

"6. That if the decision herein shall be in favor of plaintiff and he shall be held an employe of defendant within the meaning of and entitled to all the benefits and privileges of the Federal Employers' Liability Act at the time of receiving such injury, the amount of the award herein shall be an additional $12,500 without deduction of any part of the $12,500 heretofore paid.

"7. That defendant will pay the costs of this arbitration proceeding as such costs may be fixed by the arbitrators."

The award of the arbitrators was as follows:

"We, the undersigned, Matthew M. Joyce of Minneapolis, Minnesota, Harry S. Stearns of St. Paul, Minnesota, and John P. Devaney of Minneapolis, Minnesota, the arbitrators agreed to in that certain agreement of submission to arbitration herein under Chapter 81, General Statutes, Minnesota, 1923, and dated the 17th day of September, 1929, do certify that the above entitled matter was originally heard on October 3rd and 4th, 1929, and then adjourned until the 14th day of October, 1929, which date was thereafter found inconvenient for the interested parties, and the matter was thereupon

by informal agreement continued until the 17th day of October, 1929, at which time proceedings were resumed, arguments had and the cause submitted; and we do make and submit the following findings of fact and conclusions of law to the District Court of Hennepin county, Minnesota, after consideration of the pleadings and the evidence submitted on behalf of plaintiff and defendant.

"FINDINGS OF FACT.

"We find:

"1. That the Minneapolis, St. Paul & Sault Ste. Marie Railway Company, the defendant herein, is a railway corporation engaged in interstate commerce, having its principal office and place of business at Minneapolis, Minnesota.

"2. That the plaintiff, James M. Borum, suffered injury resulting in the loss of both legs below the knee while acting as a switchman in the yards of the Minneapolis, St. Paul & Sault Ste. Marie Railway Company on the 11th day of December, 1928.

"3. That the circumstances of the infliction of said injury were such as to make a jury question as to the negligence of the defendant, its agents or servants, proximately causing or contributing to said injury. On this issue of negligence we find for the plaintiff.

"4. That suit for said injury was duly brought under the Federal Employers' Liability Act, as shown by the pleadings on file herein, and that the status of the said plaintiff as to his being an employee within the meaning of the act is in controversy herein; that if not an employee of the defendant within the meaning of said act and entitled to its benefits and privileges, he has no cause of action against the defendant.

"5. That the defendant has paid to the plaintiff, irrespective of the question of its legal liability in the premises, the sum of twelve thousand five hundred dollars ($12,500) on account of said injury, and that the plaintiff may retain said sum irrespective of the decision herein on the merits and legal questions involved.

"6. That plaintiff, James M. Borum, was employed by the defendant, the Minneapolis, St. Paul & Sault Ste. Marie Railway Com-

pany, in the year 1921, and was thereafter at all times up to and including December 11, 1928, an employee of said defendant within the meaning of the Federal Employers' Liability Act.

"7. That the true name of the plaintiff was, and is at all times here under consideration, James M. Borum.

"8. That in October, 1921, plaintiff was forty-nine years of age. That in said month and year he sought employment of the defendant and in his written application for employment he gave his age as thirty-eight years, knowing such statement to be untrue.

"9. That the evidence relied upon by the plaintiff as to the knowledge possessed by the defendant of plaintiff's age at the time plaintiff sought employment was so unsatisfactory as bearing upon the question of estoppel, that the arbitrators have been unable to make any finding thereon.

"10. That the plaintiff submitted to the usual medical examination prescribed by the defendant and was found to be in good health and acceptable physical condition.

"11. ' That neither his age nor the physical condition of the plaintiff contributed to his injury.

"12. That the work performed by the plaintiff for the defendant was satisfactory.

"13. That there was in effect throughout the term of the plaintiff's employment with the defendant a contractual agreement and schedule between the defendant company and various organizations of defendant's employees, section 22 of which reads as follows:

" 'Applications for employment in yard service not rejected in thirty days will be considered accepted,' to the benefits of which plaintiff was at all times during his employment entitled.

"14. That the plaintiff was not rejected within the thirty day period mentioned following his entry into service, and that thirty days after entering defendant's service the status of the plaintiff became fixed as an employee and he was immune from discharge on anything in connection with the application.

"15. That at the time plaintiff was employed and throughout the period of his employment with the defendant, defendant com-

pany had a rule known as No. 16 which provides among other things that:

" 'No person inexperienced in railroad work over 35 years, and no experienced person over 45 years, shall hereafter be taken into the service.'

"16. That at the time plaintiff was employed and throughout the period of his employment with the defendant, defendant company had a rule in connection with its pension system known as No. 4 (A), which provides that:

" 'All officers and employees who have attained the age of 65 years shall be retired; provided, however, that the pension board with the approval of the president, shall have power to retain in the service any officer or employee who has reached the age of 65 years, if in their opinion it is in the interest of the company so to do, but such retention in the service shall not extend beyond the period when such officer or employee shall have attained the age of 70 years.'

"CONCLUSIONS OF LAW.

"The arbitrators are of the opinion, in view of the foregoing determinations of fact, and therefore conclude as a matter of law, that the plaintiff, James M. Borum, was, thirty days after his entry into service of the defendant company in 1921 and at all times thereafter up to and including the 11th day of December, 1928, an employee of the defendant company within the meaning of the Federal Employers' Liability Act. That both parties were at the time and place of the accident, on said date sustained by the plaintiff, engaged in interstate commerce, and that by virtue of the injuries sustained by the plaintiff while in such employ of the defendant, he is entitled to recover from and of the defendant the sum of twelve thousand five hundred dollars ($12,500) in addition to the sum of twelve thousand five hundred dollars ($12,500) heretofore voluntarily paid by the defendant company to the plaintiff. That the defendant pay the accrued costs and expenses of this arbitration. And such constitutes the finding and award of the arbitrators herein."

Afterwards there was a motion granted to recommit to the arbitrators for further findings the following matters:

"1.   Whether the plaintiff understood, at the time of making the written application for employment referred to in finding number 8, that defendant had a rule or practice against accepting men over 45 years of age as employees in its train service operations.

"2.   Whether plaintiff, at the time of making such application for employment, knew he was ineligible as an applicant for employment in switching service under the rules or practice of defendant and whether he made the untrue statement of his age for the purpose of securing such employment in disregard of such rule or practice.

"3.   Whether plaintiff made, at the time of making such application for employment, a knowingly false statement of his age to defendant's chief examining surgeon and whether the same was relied on by the surgeon in issuing for plaintiff a certificate of physical fitness required by defendant of employees entering its train service.

"4.   Whether defendant gave plaintiff employment as a switchman upon the basis of plaintiff's said application and medical examination and whether said application and medical examination were a regular and essential part of securing employment with defendant under its rules and practices.

"5.   Whether defendant had the purpose in adhering to the rule referred to in finding number 15, of promoting safety and efficiency in its railway operations."

In compliance with the order granting the motion, the arbitrators found:

"This matter having been referred to the undersigned arbitrators * * * for further findings as specified and set forth in the said order; and the arbitrators having conferred and given heed to the direction of the court, and considering the record, do make and find as follows:

"1.   With reference to the matters set forth in paragraph No. 1 on the second page of the court's order, the arbitrators find that the

plaintiff, at the time of making the written application referred to for employment, understood that the defendant had a rule or practice against accepting men over forty-five years of age as employees in its train service operation.

"2. With reference to the matters set forth in paragraph No. 2 of the court's order, the arbitrators find that the plaintiff did not know that he was ineligible as an applicant for employment in switching service under the rules or practice of the defendant; and we further find from the evidence that it was a general practice for men over forty-five years of age to state their age as being under forty-five years when seeking employment of the defendant, and that the defendant was aware of such practice and that men over forty-five years had been employed by defendant in temporary service; and we further find that the plaintiff made the untrue statement of his age for the purpose of securing employment in disregard of the rule or practice heretofore designated as rule No. 16.

"3. With reference to the matters set forth in paragraph No. 3 of the court's order, the arbitrators find that at the time of the plaintiff's making his application for employment to the defendant he made a knowingly false statement of his age to the defendant's chief examining surgeon, and that the same was relied upon by such surgeon as one of the factors considered by him in determining his conclusion with reference to issuing a certificate of physical fitness required by the defendant of employees entering its train service.

"4. With reference to the matters set forth in paragraph No. 4 of the court's order, the arbitrators find that the defendant gave plaintiff employment as a switchman on the basis of plaintiff's application and medical examination, and further find that such application and medical examination were a regular and essential part of securing employment of the defendant under its rules and practices.

"5. With reference to the matters set forth in paragraph No. 5 of the court's order, the arbitrators find that the purpose of the

defendant in promulgating its rule referred to in finding No. 15 was to promote safety and efficiency in its railway operation."

The arbitrators made the following memorandum explanatory of supplemental finding No. 2:

"With reference to finding No. 2 herein it is the opinion of the arbitrators that in view of the fact that the record shows that the following testimony was given by the plaintiff: 'They were liable to hire me over the age limit, which they have done,' and that the record further showed the defendant's witness Pagel had testified that the practice of men giving erroneous ages in order to obtain employment was one which was being 'done every day' and was a general practice 'in this northwest territory' with reference not only to the defendant but to other railroads as well—we could not find that the plaintiff knew he was 'ineligible as an applicant for employment.' We assume anybody could apply for employment and would be eligible to seek the same. This eligibility of the applicant could mature into a regular employment even though he were over forty-five years old, if the defendant elected to waive or modify its rule. Having made the rule, the defendant could, of course, waive, change or abrogate it. While being eligible as an applicant, nevertheless under the rule enforced, he would be ineligible as an employee. We regard a substantial difference existing between one's eligibility to apply for employment and one's eligibility as an employee under a rule such as here existing where the same is enforced."

■ The plaintiff urges that the award is final since the agreement of submission was of all questions of law and fact and the award could not be vacated by the court upon any ground. We give this claim short attention. The agreement for arbitration was under G. S. 1923 (2 Mason, 1927) § 9513, et seq. It is so recited in the agreement though the agreement does not follow strictly the form provided by § 9514. Pleadings had been framed before, and this accounts for it. Counsel for the plaintiff stated to the court that the arbitration was under § 9513, et seq.

The general grounds for vacating an award, as provided by § 9517(1-5) refer to fraud or misconduct; or that the arbitrators exceeded their powers; or that the award was so indefinite and imperfect as not to be effective. No complaint of the award on these grounds is made. By § 9517(5) it is provided that an award may be vacated upon the ground that it is "contrary to law and evidence." Similar language is used in § 9325(7) relative to motions for a new trial, where one ground is that the decision "is not justified by the evidence or is contrary to law." In construing this phrase, "contrary to law," it is held that a verdict is contrary to law if wholly without support in the evidence. It is not contrary to law if only of such character that the court might grant a new trial in its discretion on the ground of insufficiency of evidence. And the phrase has been held applicable to a disobedience of instructions. Buck v. Buck, 122 Minn. 463, 142 N. W. 729; First Nat. Bank v. Strait, 71 Minn. 69, 73 N. W. 645; Valerius v. Richard, 57 Minn. 443, 59 N. W. 534; Alden v. City of Minneapolis, 24 Minn. 254. This was the practical construction in In re Solliday v. St. Paul Union Depot Co. 178 Minn. 219, 226 N. W. 572.

In the Strait case, 71 Minn. 69, 71, 73 N. W. 645, Mr. Justice Mitchell stated the test to be whether, "conceding all that the evidence tends to prove, the verdict is not supported by the principles of law applicable to the facts." And in the Alden case, 24 Minn. 254, 260, Mr. Justice Cornell, in considering the seventh ground for a new trial, said that "in considering the question whether it is contrary to law we must assume that state of facts most favorable to the verdict which, under the charge, the jury was at liberty to find." The review in an arbitration proceeding is much the same. Arbitrations are favored. All intendments support the award. The effort is to sustain it. If there is no evidence in its support it will not stand. It is clear that the parties had in view M. St. P. & S. S. M. Ry. Co. v. Rock, 279 U. S. 410, 49 S. Ct. 363, 73 L. ed. 766. They felt that the crucial question was whether the plaintiff below was an employe who could avail himself of the federal employers liability act under the construction there given. All of the parties

knew what the purpose of the agreement was, and the language of Chief Justice Gilfillan, in Goddard v. King, 40 Minn. 164, 167, 41 N. W. 659, 661, a common law arbitration, to the effect that where the agreement "made the arbitrators judges between them of the law and the fact, they are bound by the decision, if fairly and honestly made, even though the arbitrators have erred in their conclusions of fact, or in the law which they have applied to them," is without application. When they used the term "law and fact" they did not intend that the subject matter of the controversy submitted could be fairly decided contrary to the applicable law and be final and without review. The statute under which they proceeded provides for the filing of the award with the clerk of court, § 9515; its acceptance or rejection or resubmission, § 9516; the grounds of its vacation, § 9517; its modification, § 9518; and the rendition of judgment and possible appeal, § 9519. It was not intended by either party that an award in disregard of the evidence and the law would be final, though it did intend that a finding based on evidence should not be subject to review. The plaintiff's claim of absolute finality is without merit.

■ The plaintiff claims that the rule to the effect that applications for employment in yard service not rejected in 30 days will be considered accepted is controlling; that the plaintiff, not having been rejected, acquired the status of an employe; and that, having continued in his work for seven years and until his injury, he was then an employe entitled to the protection of the federal employers liability act. In short, the arbitrators found that he was an employe within the act. The evidence of two witnesses for the defendant, who were engaged many years in connection with the hiring of employes for the defendant, put this interpretation upon the rule. There was no testimony opposed. One of the arbitrators put to a witness for the defendant, who had been its superintendent of employment for many years, this question:

Q. "This record shows that Mr. Borum went back to work in 1921, the second time, and that he was hurt in December, 1928; he was there approximately some seven years. Assuming that a few

days before this accident you had discovered that he was eleven years older than he had told you, and assuming also that his work was satisfactory throughout that period, as indicated by the testimony of Mr. Danforth, what would you have done on the obtaining of that information?

A. "I don't think that anything could have been done at that time. We have got to get at that in accordance with our agreement with the organizations—why, you have got to discover anything of that kind within a certain limit, and that does not cover years; it covers months.

\* \* \* \* \*

Q. "Assuming that you had employed a man outside of the organization, who was not bound by the contract with the organization, and that same information would come to you, what would you have done under those circumstances?

A. "Oh, I don't know; that is a question."

By counsel for defendant:

Q. "Well, as I understand it, if he was to be rejected, he would have to be rejected within 30 days from the time of his application?

A. "Yes, sir.

Q. "And if you did not find it out within the 30 days, then he could not be discharged, unless charges were preferred against him, and a hearing had, and good cause shown for his discharge. Do you know whether or not that would be considered sufficient cause, he having falsified his age?

A. "Well, now, I could not pass on that."

The chief clerk of the department, in service for the defendant ten years, testified:

Q. "You know, from your employment in employing men, that if you had made an investigation of his age within 30 days, and found out that his age was more than 45, you would then have the right to reject his application, would you not?

A. "Within 30 days, yes.

Q. "You would have the right to put the man out of the employment of the company?

A. "Yes, sir.

Q. "That would be because, if you found he made a misstatement as to his age or any other matter that was not true, that you would have the right to discharge him?

A. "Yes.

Q. "At the end of 30 days, under article 22, he would then be immune from discharge, except for a violation of the rules and a hearing, would he not?

A. "He would be immune from discharge on anything in connection with the application.

Q. "On anything in connection with his application?

A. "Yes, sir.

Q. "As I understand it, at the end of 30 days, his status as an employe of the railroad company would become fixed and he could not lose that employment because of anything that occurred in the application; that is correct, isn't it?

A. "Yes, sir.

Q. "But before that 30 days, he could lose his employment because of statements made in the application?

A. "Yes, sir.

Q. "At the end of the 30 days, he could not lose his status as an employe of the Soo Line Railroad Company except for a violation of the rules or failure to perform his work, and on charges preferred and a hearing had, that is correct, isn't it?

A. "Yes, that is right.

Q. "If he had made any misstatements otherwise than as to his age and his place of birth, for instance, if you had made an investigation, you could have readily found that out in less than 30 days, couldn't you?

A. "I presume so.

Q. "And you made no effort to do that?

A. "No, sir."

The witness further said in response to hiring a man over the age limit:

A. "Well, if a man comes in and wanted a job, and I asked him how old he was, and he said, 'I am 50 years old,' if he could pass the doctor's examination, I would put him to work temporarily, but I would put him out inside of 30 days.

Q. "What do you do in a case where a man, for instance, discloses his true age, and he is over age, and you employ him for these 30 days, how do you handle his application in that case?

A. "I put it to one side, and within 30 days—I take probably the 29th day—it has to be within 30 days—I would take him out of the service."

It may be queried whether under the Rock case the provision of the rule is important. The language of that case refers to an employe being rightly in the employ of the carrier. However we accept the finding of the arbitrators based upon the testimony of the defendant's witnesses that the employe became an accredited employe at the end of 30 days. It was not customary to investigate ages. The officer took a look and used his judgment. It was customary to investigate the record of the applicant for several years back in respect of matters disclosed by the examination. This was done in respect of the plaintiff. No investigation of his age was made until after action brought more than seven years after his second employment. Times were brisk and the defendant needed men. The plaintiff had worked for it for six years some time before. He was a satisfactory worker. It was glad to have him back. It just about knew that his age was suspicious. It could have found it readily. It investigated him in other respects for five years back. The question of his age did not trouble. Without more we pass to the decisive question in the case.

■ The defendant relies chiefly on M. St. P. & S. S. M. Ry. Co. v. Rock, 279 U. S. 410, 49 S. Ct. 363, 364, 73 L. ed. 766, reversing 247 Ill. App. 600, a case much different in its facts, in support of its claim that the plaintiff, although engaged in interstate commerce and though he sustained an injury as the result of the defendant's negligence, cannot recover because of his false representation of his age to get employment; and this although his age and physical condition had nothing to do with the injury.

142

In the case cited, which states the controlling law for us, the employe, Joe Rock, applied for a position with the railroad·as switchman. He submitted to a physical examination. He had been treated for ulcers of the stomach; his appendix had been removed; and he had a rupture. Because of his physical condition he was rejected. Later he applied for a position·under the name of John Rock. He procured one Lenhart to represent himself to be John Rock. Lenhart, under the name of John Rock, took the physical examination and passed. Joe Rock, under the name of John Rock, took employment from the carrier and was injured while doing. the work of an employe in interstate commerce. He was not the man for whose services the railroad contracted. Here the plaintiff was. The defendant knew him. It had used him for six years before. And altogether it used him for 13 years without special inquiry.

Rock sustained an injury to which his physical condition did not contribute and with which his fraudulent procurement of Lenhart to impersonate him under the name of John Rock had nothing to do. Referring to him, the court said [279 U. S. 412]:

"Respondent was an imposter. His true name is Joe Rock. He obtained employment and remained at work by means of deception and fraud. October 1, 1923, he applied for employment as a switchman in petitioner's yard at Kolze. In accordance with a rule and the practice of petitioner, respondent was sent to the company's physician for physical examination. It was found that he had been treated surgically for ulcer of the stomach and removal of the appendix and that at the time of the examination he had a rupture. His application was rejected because of his condition. A few days later, respondent under the name of John Rock, representing that he had not theretofore applied, again made application for such employment. Petitioner's superintendent was deceived as to respondent's identity and accepted him, subject to examination to ascertain whether he was physically fit for such work, and sent him to the physician to be examined. Then respondent procured one Lenhart to impersonate him and in his place to submit

to the required examination. The physician found Lenhart's condition satisfactory; and, believing that he was the applicant, reported favorably on the application. As a result of the deception petitioner gave respondent employment and it did not learn of the fraud until after December 24, 1924, the date on which respondent was injured.

"We are called upon to decide whether, notwithstanding the means by which he got employment and retained his position, respondent may maintain an action under the Federal Employers' Liability Act."

The court held that he could not recover and put its decision upon the ground that he was not of right an employe within the employers' liability act; that public policy required the support of the railroad in its reasonable regulations having to do with the protection of the employe and his coemployes and the general public; and that he could not recover though there was no causal connection between his fraud or his physical condition and the injury caused by the negligence of the railroad. The court said [279 U. S. 413]:

"The carriers owe a duty to their patrons as well as to those engaged in the operation of their railroads to take care to employ only those who are careful and competent to do the work assigned to them and to exclude the unfit from their service. The enforcement of the act is calculated to stimulate them to proper performance of that duty. Petitioner had a right to require applicants for work on its railroad to pass appropriate physical examinations. Respondent's physical condition was an adequate cause for the rejection of his application. The deception by which he subsequently secured employment set at naught the carrier's reasonable rule and practice established to promote the safety of employees and to protect commerce. It was directly opposed to the public interest because calculated to embarrass and hinder the carrier in the performance of its duties and to defeat important purposes sought to be advanced by the act. ＊ ＊ ＊

"Respondent's position as employee is essential to his right to recover under the Act. He in fact performed the work of a switchman for petitioner, but he was not of right its employee, within the meaning of the act. He obtained and held his place through fraudulent means. While his physical condition was not a cause of his injuries, it did have direct relation to the propriety of admitting him to such employment. It was at all times his duty to disclose his identity and physical condition to petitioner. His failure so to do was a continuing wrong in the nature of a cheat. The misrepresentation and injury may not be regarded as unrelated contemporary facts. As a result of his concealment his status was at all times wrongful, a fraud upon the petitioner, and a peril to its patrons and its other employees. Right to recover may not justify or reasonably be rested on a foundation so abhorrent to public policy."

The public policy raised by the law has some reason for its origin in the liability act, which gives the employe rights and privileges which he did not have at common law. The rule of the company was against the employment of inexperienced workers over 35 years of age and experienced persons over 45 years. It had the purpose in making and enforcing this rule of promoting safety and efficiency in its railway operations. This is found by the arbitrators. It appears from the testimony of the vice president that the defendant thought an inexperienced man of 35 better than an experienced one of 45. The inexperienced man of 35 had a possibility of 30 years of work before retirement and pension and the 45-year old man a possibility of 20. The period might be extended five years. On the average there is better service per year from a man who enters service at 35 than at 45; and, if he lives until 65, the one entering the service at 35 presumably has better earned his pension. In a long period of years the 35-year old man is the more profitable. The only reason the 45-year old man is employed at all is that the carrier cannot get enough 35-year old or younger men.

The public policy effective here did not require the defendant to have or enforce such a rule. It may have had none at all. Then

it would be liable for negligence. It might have waived it. Then it would be liable. The public policy upon which the defendant relies was a policy declared and enforced to sustain the rule; not to require its making. No public policy was raiséd by the law in aid of the public or employes to prevent a man from 45 to 65 working as a switchman if he entered employment at the prescribed age. Borum was fit to work in the yards when injured and for nine years more. His wrong was in misrepresenting his age to get a job. Rock never was fit to be in the yards. It is not supposed that a coemploye or one of the public injured could complain of the defendant because it did not make or observe such a rule; and in such a case there could not be a recovery in the absence of negligence which was a proximate cause. There was no policy offended by using a man of the plaintiff's age. In 1921 he had 16 working years before retirement; and in 1928, when injured, nine years. The pension board might extend his work period five years.

The arbitrators found that it was generally known that railway employes, in order to avoid the application of an unfavorable age rule, gave a wrong age. The chief clerk testified that he took his own judgment in determining age; that he did not investigate; that it was the general practice to understate ages "in this northwest territory." Again he said: "I would not say that I know it is the practice; I believe it is an understanding." And again: "I think it is done every day." The arbitrators were of the opinion that in view of the testimony of the plaintiff that the defendant was likely to hire him though over the age limit and the common practice of understating age, the plaintiff did not know that he was ineligible to apply, though if the rule were enforced he would not be eligible as an employe; and that at the end of the 30-day period he was an accepted employe. The defendant did not care enough about his age to investigate. Information was readily available. But it examined his record in other respects for five years back. We do not discuss the cases. The Rock case is controlling authority; and, applying the rule of that case, we have only to determine whether plaintiff's misrepresentation of age to get em-

ployment, there being no causal connection between the misrepresentation and the injury, prevents a recovery under the findings and award approved by the district court. Prior to that case the doctrine found support in Stafford v. B. & O. R. Co. (D. C.) 262 F. 807, and N. & W. Ry. Co. v. Bondurant's Admr. 107 Va. 515, 59 S. E. 1091, 15 L.R.A.(N.S.) 443, 122 A. S. R. 867. It probably is conceded that except where public policy is successfully invoked the holdings generally have been that in the absence of cause and effect a recovery is not prevented by the misrepresentation. See Hart v. N. Y. C. & H. R. R. Co. 205 N. Y. 317, 98 N. E. 493; Matlock v. W. G. & St. L. Ry. Co. 198 Mo. 495, 95 S. W. 849, 115 A. S. R. 481; Lupher v. A. T. & S. F. Ry. Co. 81 Kan. 585, 106 P. 284, 25 L.R.A.(N.S.) 707; L. & N. R. Co. v. Lewis, 218 Ky. 197, 291 S. W. 401. It was so held under the federal act in Payne v. Daugherty (C. C. A.) 283 F. 353, and St. L. & S. F. R. Co. v. Brantley, 168 Ala. 579, 53 So. 305, public policy not being featured but importance being attached to the absence of a causal relation between the representation and the injury. We note that in Ward v. E. J. & E. Ry. Co. 259 Ill. App. 672 (abstract of decision) the same appellate district that decided the Rock case, under circumstances less aggravating than in that, held against a recovery. And in Qualls v. A. T. & S. F. Ry. Co. —— Cal. App. ——, 296 P. 645, the misrepresentation was held so insignificant as to be of no consequence.

Giving due consideration to the claim that public policy as a matter of law prevents a recovery and due consideration to the award and intendments which attach to the findings of the arbitrators and the inferences which they draw, we hold that the plaintiff's falsification of his age to get a job, under the circumstances narrated, it having no causal connection with his injury, did not prevent his recovery under the liability act. The Rock case was not intended to determine against liability upon such facts as are before us.

Judgment affirmed.

STONE, J. (concurring).

I concur in the result.

WILSON, C. J. (dissenting).

· I dissent for the reason that in my opinion the doctrine of M. St. P. & S. S. M. Ry. Co. v. Rock, 279 U. S. 410, 49 S. Ct. 363, 73 L. ed. 766, prevents plaintiff's recovery.

LORING, J. (dissenting).

I agree with the Chief Justice.

