# FRED W. MUELLER v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.[1]

March 22, 1935.

No. 30,235.

[1]Reported in 259 N. W. 798.

84

*Davis, Michel, Yaeger & McGinley,* for appellant.

*William T. Faricy, Warren Newcome, Alfred E. Rietz,* and *Wilson & Wilson,* for respondent.

STONE, JUSTICE.

Action for damages for breach of contract of employment wherein plaintiff, the employe, had a verdict. Defendant employer's motion for a new trial was denied, but its alternative motion for judgment notwithstanding the verdict granted. Judgment was entered, and plaintiff appeals.

For some time before April 5, 1929, plaintiff was in the employment of defendant as a "yardman" at Appleton, Wisconsin. April 5 he was discharged. His claim is bottomed upon defendant's alleged breach of a contract, in force at the time, between defendant and other railroads on the one side and the four railway brotherhoods (of one of which plaintiff was a member) on the other. Under that contract, plaintiff's "grievance," resulting from his discharge, was submitted to arbitration. The result was in his favor—hence his claim that his dismissal by defendant was a breach of the latter's contract with the brotherhoods; and that he is entitled to recover the damage resulting through loss of earnings following his discharge. His cause of action is based upon the decision of the arbitrators, which, it is argued, was final and binding.

In the background and as premise for the argument for plaintiff is the right of employes to bargain collectively. That right needs no reaffirmance. No statute is needed to make it the law of this state. George T. Ross Lodge No. 831 v. Brotherhood of R. R. Trainmen, 191 Minn. 373, 254 N. W. 590. It is almost axiomatic that what one may contract for individually many may contract for collectively. Bohn Mfg. Co. v. Hollis, 54 Minn. 223, 55 N. W. 1119,

21 L. R. A. 337, 40 A. S. R. 319. But when, as to a collective contract, the judicial function is invoked, decision must stand upon the same rules of interpretation and enforcement that prevail in other cases of contract. We do not have, and judges cannot make, one law for one class of contracts and another and different law for another sort. The truth of that can be no better exemplified than by this case. Plaintiff relies upon an "arbitration agreement," and his argument here is put thereon as, "in effect, an agreement to arbitrate as at common law."[2]

Plaintiff's right to sue is put upon the contract between defendant and the brotherhoods. He claims the contract right to remain in defendant's employ until rightfully discharged. Defendant's argument is that plaintiff was not bound to remain in its employ, and defendant not bound to continue him therein, for any definite time. There is no occasion to construe the contract on this point because, as will later appear, the parties themselves have construed it as to this case. But it is plain that, the contract having been made by the representatives of the brotherhoods on behalf of the "employes in train, engine and yard service," plaintiff is entitled to sue on the contract as one made in his behalf by a duly authorized agent; that is, this suit must be considered as one by a party to, rather than by a mere beneficiary of, the contract. The difference may not be important in result. But it is expedient, if not necessary, to indicate the premise upon which we consider the relevant provisions of the agreement. We hold that plaintiff has the right to sue, as a party to the contract, for any breach thereof by defendant.

---

[2]We do not have legislation comparable with the English Conciliation Act of 1896 "for the prevention and settlement of trade disputes," 19 Halsbury's Statutes of England, 672. Section 3 provides that the General Arbitration Act, 1889, shall not apply to the settlement by arbitration of any difference or dispute to which the Conciliation Act applies. But it does declare that, in the event such dispute or difference shall be submitted to arbitration, the "proceedings shall be conducted in accordance with such of the provisions of the said [Arbitration] Act, or such of the regulations of any conciliation board, or under such other rules or regulations, as may be mutually agreed upon by the parties to the difference or dispute."

■ Defendant claims that the contract gave no authority to the board of adjustment over cases of dismissal as distinguished from those of mere discipline. Such a distinction was made in Stitt v. Locomotive Engineers' M. P. Assn. 177 Mich. 207, 142 N. W. 1110. But defendant joined plaintiff in submitting their dispute to the board. Both considered the matter within the board's jurisdiction under the contract. Such a practical construction of their agreement by contracting parties is controlling unless it is one which "a reasonable person" could not adopt. Restatement, Contracts, § 235 (e) and Minnesota Annotations; 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1820. We are unable to say that the joint action of the parties indicated an interpretation (that dismissal was "discipline") not open to the mind of a reasonable person.

■ As already appears, the case must go to decision as one of arbitration at common law. That automatically eliminates certain questions which might be present if the award in question were the result of statutory arbitration. 2 Mason Minn. St. 1927, § 9517. See Borum v. M. St. P. & S. S. M. Ry. Co. 184 Minn. 126, 238 N. W. 4. Arbitration is a favorite of the law and an award not lightly to be interfered with. Arbitrators may go wrong and yet their decision be final. Larson v. Nygaard, 148 Minn. 104, 180 N. W. 1002; 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 488. Arbitration is to be especially favored in the field of labor relations and the differences between employers and employes which arise from them. Courts will be reluctant to interfere with the decisions of arbitrators on such issues. But, when their jurisdiction is properly invoked, the appropriate judicial remedy cannot be denied any party who shows himself entitled to it.

■ Plaintiff was discharged April 5, 1929, by a notice reading as follows:

"You are hereby notified that after investigation of your appropriating and taking home a shovel belonging to the Coated Paper Co. at Appleton on April 2, 1929, and for your cumulative record and general unsatisfactory service the following discipline has been applied: Dismissal from service."

The investigation mentioned was made by a trainmaster. The procedure was that contemplated by the contract with the brotherhoods. It required among other things that an employe under investigation, if he so desired, should have a fellow employe of his own choice present during the investigation. Plaintiff waived his right to have another employe present. The engineer and yard engine foreman, with and under whom plaintiff worked for some time, were also questioned. The questions and answers were all recorded. As to the shovel incident, the statements taken tended on the one hand to prove plaintiff's guilt and on the other to establish his innocence; that is, they made a question of fact. But on the question of his "general unsatisfactory service," the evidence was all strongly against plaintiff. The statements of his two fellow employes showed that he was not only an incompetent but also a dangerous man to have on a yard crew. Plaintiff made no effort to meet the charge of "general unsatisfactory service" or to contradict the evidence thereof, in the statements of his fellow employes, which showed numerous and convincing acts of incompetence and insubordination, dangerous not only to fellow employes but also to others outside defendant's service.

The self-stated purpose of defendant's contract with the brotherhoods is to settle grievances of employes "at home." That failing, they are submitted to the "Train Service Board of Adjustment for the Western Region" with all "supporting papers." Wherever possible, the contract contemplates that there shall be a "joint concrete statement of facts" and, if wanted, "additional evidence, either oral or written, from either side."

Pursuant to such provisions, plaintiff and defendant joined in what is miscalled a "Joint Statement of Facts." It reads thus:

"Claim:

"Claim of Yardman Fred W. Mueller for reinstatement with pay for time lost, formerly employed at Fond du Lac, Wisconsin, Lake Shore Division, dismissed from service April 2, 1929, based on Rule 23, Yard Schedule.

"Joint Statement of Facts:

"On April 5, 1929, Yardman Fred W. Mueller was dismissed from the service of the C. & N. W. Railway account alleged appropriating and taking home a shovel, belonging to the Coated Paper Company at Appleton, on April 2, 1929.

"Employees' Position:

"It is the opinion of the employes that former Yardman. Fred Mueller did not appropriate a shovel as alleged and his dismissal was unwarranted.

"Carrier's Position:

"It is the position of the carrier that F. W. Mueller was guilty of the charges [sic] for which he was disciplined."

Notwithstanding its label, this is not a statement of facts but one only of the claims of positions of the disputants. It contains not a word of evidence for or against either claim or position. On it alone no tribunal could decide anything. But the result "at home" being unsatisfactory to plaintiff, he and defendant did submit the matter, not alone upon this joint statement but also upon the "supporting papers," which included the statements taken in defendant's investigation. There were a "Brief of the Management" (of defendant) and an "Employe's Brief" for plaintiff. The latter denied the charge that he had purloined the shovel and included a general statement of the several signers that plaintiff was "an honest, conscientious worker while performing his duties as switchman and a good citizen." It did not mention, to say nothing of denying or explaining, the specific and numerous instances of insubordination and inattention to plain duty shown by the statements of his fellow employes.

The decision of the board was made August 28, 1930, in the following language:

"Claim of Yardman Fred W. Mueller for reinstatement with pay for time lost, formerly employed at Fond du Lac, Wisconsin, Lake Shore Division, dismissed from service April 2, 1929, based on Rule 23, Yard Schedule.

"Decision: It is the opinion of the Board that the primary charge for which Mueller was discharged is not sustained by the evidence, therefore, decides he is not guilty of such charge and that he shall be compensated for time lost."

On the face of the arbitration proceedings it is thus apparent that the decision of the board was not a decision of the issues submitted. It acquitted plaintiff only of "the primary charge" for which he was dismissed. It fails to indicate what the arbitrators considered the "primary charge" to be. It does not mention the other charge submitted for decision. The argument assumes that the "primary charge," so decided, was that of the larceny of the shovel. If that had been the only issue submitted, the decision of the board would be binding. But the board, for some reason not disclosed, did not decide the other accusation of general unsatisfactory service, which so plainly was submitted as one of "the charges for which he [plaintiff] was disciplined." Hence there has been no decision of a determinative issue submitted to the board. There has been decision of only one of two determinative questions, favorable decision of both being condition precedent to plaintiff's success. Why the other issue was left undetermined is not explained. Its presence was explicitly recognized by the board in confining its decision to the "primary charge." So, on the facts, we but agree with them in concluding that another question was before them.

The case is not one of defendant's succeeding by showing a ground for setting aside the award. Plaintiff cannot prevail simply because a controlling issue submitted to the arbitrators has never been decided, and so there has been no valid award.

The jurisdiction of the board as a tribunal for conciliation or arbitration (whether either or both we have no occasion to determine) is fixed by the contract between the railroads and the brotherhoods. That jurisdiction was invoked in this case by the submission. In any case of common law arbitration, "the rule is not only that the arbitrators cannot go beyond the submission, but that they [the arbitrators] must decide all the matters embraced in the submission, which are brought before them by the parties, or which

are not withdrawn from their consideration by the parties. If they violate this rule, or if the award shows that they have not acted within it, the award will be void." See 5 C. J. 143, where, in a footnote, the cases which support the text, too numerous for citation here, are collected. Application of the rule is illustrated by Adams v. New York Bowery F. Ins. Co. 85 Iowa, 6, 12, 51 N. W. 1149. There arbitrators had been selected under a fire insurance policy to appraise certain articles. They "only appraised a part of them." For that and other but related reasons the award was held not binding. Kabatchnick v. Hoffman, 226 Mass. 221, 115 N. E. 309; Jones v. Welwood, 71 N. Y. (26 Sickels) 208; and American Trading Co. v. Steele (C. C. A.) 274 F. 774, show similar applications of the rule. See also Carnochan v. Christie, 11 Wheat. 446, 6 L. ed. 516. Probably our case most closely in point is Kaufman Jewelry Co. v. Insurance Co. 172 Minn. 314, 215 N. W. 65, 431, wherein an award of appraisers of a fire insurance loss was held not binding because a determinative issue had been ignored in making it. Stated generally, the rule is that the award of arbitrators must be responsive to the submission; that is, it must decide all of the determinative issues submitted. If on its face it fails in that, the award is invalid. In other and more accurate words, there is no award.

The judgment is affirmed.

DEVANEY, CHIEF JUSTICE (dissenting).

I cannot join in the majority opinion for the reason that I believe it clearly is based upon a false assumption of fact, namely, that the issue was not made up by the arbitration agreement but rather by the briefs of the parties, particularly the brief of the railway company, which set forth the charge of unsatisfactory service. The majority opinion first sets out a "Joint Statement of Facts," which shows that Mueller was dismissed "account alleged appropriating and taking home a shovel." Later the majority opinion says: "If that had been the only issue submitted, the decision of the board would be binding."

If the brief of the defendant brought into the case an issue not included in the original submission, then the majority opinion is

right. Otherwise it is wrong and unjust in that it brings into the submission a charge or issue not included in the submission, never argued nor mentioned by the employe and never considered by the arbitration board. If that can be done, then arbitration of disputes between employe and employer in this manner is of little value and can be rendered impotent by the bringing in of additional issues through claims made in the briefs of either party.

The issues are made up by the arbitration agreement. The issue submitted was that embraced in the agreement of arbitration. It was the agreement of ordinary men, not trained in the law. There should not be read into it an issue never mutually contemplated or agreed to. It is true that other evidence was submitted; but it must be noted that the evidence of unsatisfactory conduct appeared on the part of the railway company without a defense by Mueller, who confined himself to the one issue set forth in the arbitration agreement. It must further be remembered that without the shovel incident the other accusations made against Mueller arose out of claimed acts of unsatisfactory service which occurred months, and as to some acts years, before the submission. Can it fairly be said that the employe ever submitted any issue other than the theft of the shovel, and can the employe by indirection be forced to submit an issue based on charges many of which are years old? If the rule that [5 C. J. 143] "the arbitrators cannot go beyond the submission, but that they must decide all matters embraced in the submission" is correct, can this decision go beyond the submission?

The submission is nothing more than the arbitration agreement signed by both parties. True, the railway company submitted a brief on unsatisfactory service. This brief the employe did not answer. The employe kept within the arbitration agreement in his brief. The employer did not. Pleadings or an arbitration agreement define the issues; the briefs submitted do not. The attempt to inject the issue of unsatisfactory service, years old, came solely from the railway company's brief. There was no joinder of issues in that the employe did not explain or deny the charge of unsatisfactory service. Therefore no issue was made. The person claiming that there was a submission of an issue surely has the burden

of proving the same as in any other case. The general rule of construction must apply to the construction of submissions and awards. So where a contract is susceptible of two constructions, one of which will render the contract valid, the other invalid, the former will be adopted. Ekblaw v. Nelson, 124 Minn. 335, 144 N. W. 1094.

The duty of the arbiters to decide all matters in the submission is well established. It is equally well established that every reasonable intendment in favor of an award once made will be given to such award. In considering the question of what is included in the submission the courts should construe it if possible in such a manner that the arbitration proceedings as a whole may be held valid. The question of the alleged appropriation of the shovel was the only thing submitted by both parties. The arbiters passed on the only question submitted. They did not fail to pass upon any issue contained in the written submission. The award was fairly made and should be sustained.

