Walter EISEN, Respondent,

v.

STATE of Minnesota, DEPARTMENT
OF PUBLIC WELFARE, and Fari-
bault State Hospital, Appellants.

No. C2–83–614.

Supreme Court of Minnesota.

June 22, 1984.

Hubert H. Humphrey, III, Atty. Gen., Steven M. Gunn, Scott R. Strand, Asst. Attys. Gen., St. Paul, for appellants.

Nancy Brogstrom Vollertsen, Jeffrey A. Hanson, Rochester, for respondent.

Gregg M. Corwin, St. Louis Park, amicus curiae for AFSCME, Council 6.

Eric R. Miller, St. Paul, amicus curiae for Minnesota Educ. Ass'n.

PETERSON, Justice.

Plaintiff, Walter Eisen, an employee of defendant Faribault State Hospital, was discharged from employment. Pursuant to a collective bargaining agreement between Minnesota State Employees Union AFSCME, Council No. 6 (union), and the State of Minnesota (employer), the propriety of the discharge was submitted to arbitration before an arbitrator selected in accordance with the agreement. The arbitrator's award sustained the discharge. Eisen moved in Rice County District Court for vacation of the award. The court vacated the award and ordered a rehearing before another arbitrator. The employer appeals, and the union appears amicus curiae as a party to the collective bargaining agreement.

The principal issues are (1) whether Eisen was a "party" to the arbitration hearing for purposes of appeal under the Uniform Arbitration Act (Uniform Act), Minn. Stat. ch. 572 (1982); (2) whether his due process rights as a public employee were violated by the arbitration procedures used; and (3) whether the arbitrator's failure to provide a taped recording of the hearing to Eisen's attorney constituted "misconduct" under the Uniform Act. The trial court held in the affirmative on all three issues. We reverse.

On December 30, 1980, Walter Eisen, a human services technician at Faribault State Hospital, allegedly slapped an epileptic patient who was blind and retarded. A short time after the alleged incident, hospital personnel met with Eisen, the union steward, and Carol Sandvick (the person who reported the incident). Later that day, Eisen was given written notice that he was suspended for 10 days pending further investigation of the incident.

On January 9, 1981, employer notified Eisen of his permanent discharge and of his right to appeal. The discharge notice stated that Eisen could proceed with arbitration under the collective bargaining agreement or, pursuant to the State Civil Service Act, Minn.Stat. ch. 43 (1980), he could request an administrative hearing before a hearing examiner.

Eisen proceeded under the collective bargaining agreement and was represented at all stages by a union representative. The discharge was unsuccessfully challenged through the first three steps of the grievance process established by the agreement. The matter was then submitted to arbitration pursuant to the fourth step.

In April, 1982, at a hearing before Larkin McLellan, an arbitrator selected by employer and the union, Eisen was represented by Nell Conley, a union business representative. Eisen and other witnesses testified on his behalf. Sandvick testified concerning her observations of the slapping incident.

On April 19, 1982, the arbitrator issued an opinion and award finding in favor of employer. The union determined not to appeal the discharge to the district court as permitted by the Uniform Act. In light of that determination, Eisen later retained an attorney to commence judicial proceedings.

The attorney, by letter, requested a copy of the taped recording of the hearing held before the arbitrator but did not state that she represented Eisen and did not state her reasons for the request. The arbitrator denied the attorney's request on the grounds that the recording was part of the personal records and notes made for his own use (no party having undertaken to

have a verbatim record made in accordance with Step 4 of the grievance procedure). Eisen's attorney then petitioned for an order mandating that the recording be turned over to the court. In a letter written to the district court, the arbitrator stated that he had erased the recording subsequent to the request of Eisen's attorney. Eisen, by his attorney, then proceeded in district court for an order vacating the arbitration award pursuant to the Uniform Act. The union was not made a party in the district court action.

1. The threshold issue is whether, under Minn.Stat. § 572.19 (1982), Eisen has standing as a "party" to seek vacation of the arbitration award. Although section 572.19 sets forth five situations in which, "[u]pon application of a party, the court shall vacate an award," the Uniform Act fails to define a "party" for such purposes. The trial court, however, concluded that Eisen was a "party" and proceeded to vacate the arbitration award. We hold that Eisen was not a party for purposes of appealing the arbitration award under section 572.19 and accordingly reverse.

■ The Uniform Arbitration Act, Minn. Stat. ch. 572 (1982), unless otherwise provided in the agreement, governs authority and procedure for judicial review of an arbitration proceeding under a private or public sector collective bargaining agreement containing an arbitration clause. *See Ramsey County v. AFSCME, Council 91, Local 8,* 309 N.W.2d 785, 789 (Minn.1981); *State v. Berthiaume,* 259 N.W.2d 904, 909 (Minn.1977).

■ We have consistently recognized that arbitration is a favored form of dispute resolution without resort to the courts. The Uniform Act has been interpreted and applied in accordance with its basic intent "to discourage litigation and to foster speedy, informal, and relatively inexpensive procedures for the voluntary resolution of disputes in a forum created, controlled, and administered by the written arbitration agreement." *Dunshee v. State Farm Mutual Automobile Insurance Co.,* 303 Minn. 473, 481, 228 N.W.2d 567, 572 (1975), *quoted in State v. Berthiaume,* 259 N.W.2d 904, 909 (Minn.1977). In accord with this underlying policy, and because the Uniform Act is silent regarding this matter, we hold that the collective bargaining agreement must be resorted to in defining a "party" for purposes of an appeal under section 572.19.

The agreement, by express terms, permitted the union, not the employee, to invoke the arbitration provisions of the agreement.[1] The only parties named in the

---

1. The contract's provision dealing with grievances provides, in part:

    Step 1: The *Union Steward, Chief Steward,* or *Union President,* with or without the employee, shall attempt to resolve the matter with the employee's immediate supervisor within twenty-one (21) calendar days * * *.

    Step 2: If the grievance has not been resolved to the satisfaction of the *Local Union* within seven (7) calendar days after the immediate supervisor's response is due, it may be presented in writing by the *Union Steward* to the next level of supervision which has been designated by the Appointing Authority to process grievances. * * *

    Step 3: If the grievance still remains unresolved, it may be presented to the Appointing Authority or designated representative by the *Chief Steward* within seven (7) calendar days after the Step 2 response is due. The Appointing Authority or designee shall arrange a meeting with the *Chief Steward* within seven (7) calendar days. The *Union Steward, Local*

    *Union President,* and a *Union staff representative* may participate in such meeting. * * *

    Step 4: If the grievance remains unresolved after the response of the Appointing Authority is given or is due, the *Union* shall have ten (10) calendar days in which to submit a letter to the State Negotiator and the Appointing Authority stating its intent to submit the issue to arbitration. When such a letter of intent has been submitted, the *Union* shall then have one hundred (100) additional calendar days from the date of the letter to notify the State Negotiator in writing, that it desires to proceed with actual arbitration of the grievance. During the one hundred (100) calendar days the *Union* and the State Negotiator may, by mutual agreement, petition the Minnesota Bureau of Mediation Services for assistance in resolving the grievance. If either party determines during the mediation process that further mediation would serve no purpose, the *Union* may proceed to arbitration. Within five (5) calendar days after the *Union* has notified the State Negotiator that it desires to

agreement under the arbitration provision were the union and the state negotiator, who, respectively, represent the employee and the employer in hearings before arbitrators selected by both parties. The arbitrator's decision is final and binding upon the parties.

■ Under federal and state law, the union has a duty to fairly represent its employees. *See Bowen v. United States Postal Service*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983); *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967); *Steele v. Louisville & Nashville R.R.*, 323 U.S. 192, 202-03, 65 S.Ct. 226, 231-32, 89 L.Ed. 173 (1944); *Davis v. Boise Cascade Corp.*, 288 N.W.2d 680, 683 (Minn.1979). The judicially created doctrine of a duty of fair representation is derived from a union's statutory right to act as the exclusive bargaining representative of all employees in a designated bargaining unit. In *Bowen*, the United States Supreme Court reaffirmed the importance of exclusive representation in resolving labor grievances. The Court stated:

> Although each party participates in the grievance procedure, the union plays a pivotal role in the process since it assumes the responsibility of determining whether to press an employee's claims. The employer, for its part, must rely on the union's decision not to pursue an employee's grievance. For the union acts as the employee's exclusive representative in the grievance procedure, as it does in virtually all matters involving the terms and conditions of employment. Just as a nonorganized employer may accept an employee's waiver of any challenge to his discharge as a final resolution of the matter, so should an organized employer be able to rely on a comparable waiver of the employee's exclusive representative.

103 S.Ct. at 596-97 (footnote omitted). The Court also noted:

> The parties to the collective-bargaining agreement, of course, may choose not to include a grievance procedure supervised by the union or, if they do, may choose not to make the procedure exclusive. * * When the collective bargaining agreement provides the union with sole authority to press an employee's grievance, the union acts as the employee's exclusive representative in the grievance-arbitration procedure.

103 S.Ct. at 596 n. 14 (citations omitted). The union, as the employees' exclusive representative, has a fiduciary obligation to protect the interests of its members. There is no claim made that the union did not fairly represent Eisen at all stages of the grievance procedures, including arbitration.

In 1971, the Minnesota Legislature enacted the Public Employment Labor Relations Act (PELRA) to promote orderly and constructive relationships between public employees and their employers. *See* Minn. Stat. § 179.61 (1982). PELRA grants to public employees rights to organize and freely choose representatives who may be certified as the employees' exclusive representatives. *See* Minn.Stat. § 179.67 (1982). PELRA recognizes that "[u]nresolved disputes between the public employer and its employees are injurious to the public as well as to the parties; adequate means must therefore be established for minimizing them and providing for their resolution." Minn.Stat. § 179.61 (1982). PELRA mandates that "[a]ll contracts shall include a grievance procedure which shall provide compulsory binding arbitration of grievances *including all disciplinary actions*." Minn.Stat. § 179.70, subd. 1 (Supp.1983) (emphasis added). PELRA also permits civil service grievance procedures to be included in the collective bargaining agree-

---

proceed with the actual arbitration of the grievance the parties shall determine the arbitrator to hear the arbitration by the method provided for in Section 2 of this Article. * * The decision of the arbitrator shall be final and binding upon the parties * * *. If either

party desires a verbatim record of the arbitration proceeding, it may cause such a record to be made, providing it pays for the record and makes a copy available without charge to the other party and the arbitrator.
(Emphasis added).

ment if the parties choose to incorporate such procedures. *Compare* Minn.Stat. § 179.70, subd. 1 (Supp.1983), *with* Minn. Stat. § 43A.33, subd. 3(c) (1982).

■ Since PELRA and the Uniform Act fail to define "party" for purposes of grievance appeals, we hold that, unless the collective bargaining agreement provides otherwise, an individual employee may not appeal an unfavorable award where the union expressly determines not to appeal. This does not foreclose an individual employee's right of action against the union in any case where the union, for discriminatory or other invidious reasons, did not fairly represent the interests of the employee, a breach of its fiduciary duty of fair representation.

Eisen argues that *Mueller v. Chicago & N.W. Ry.*, 194 Minn. 83, 259 N.W. 798 (1935), a pre-Uniform Act case, permits him, as an employee under a collective bargaining agreement, to appeal apart from his union. *Mueller*, however, is clearly distinguishable from the instant case. There, Mueller represented himself when the union failed to appear at the arbitration hearing to present Mueller's grievance. The employer ignored the arbitrator's award, and Mueller sued the employer, arguing that the award was "final and binding." The *Mueller* court held that "[Mueller had] the right to sue, as a party to the contract, for any breach thereof by defendant." *Id.* at 85, 259 N.W. at 799.

■ In contrast, the union in the instant case actively represented Eisen at the arbitration hearing. After the arbitrator upheld Eisen's discharge, the union determined not to appeal to the district court. Eisen did not assert that the union, his exclusive representative, breached its duty to fairly represent him at the arbitration hearing. Instead, Eisen sued his employer, seeking to have the unfavorable arbitration award vacated. Consistent with subsequent developments in the law of labor management relations and the statutory scheme in PELRA, we overrule *Mueller* to the extent it would accord an employee individual standing, independent of the un-

ion, to initiate judicial proceedings to challenge an arbitration award.

2. Although our holding that Eisen was without standing to appeal the arbitration award is dispositive, we further hold that there is no merit to Eisen's claim that his constitutional rights of due process were violated for want of procedural safeguards—an attorney to represent him, a hearing transcript, and a speedy trial.

■ We must look to federal law in determining whether an employer's grievance procedures meet the constitutional due process requirements. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982). The United States Supreme Court has consistently held that some form of hearing is necessary before an individual is finally deprived of a property interest. *See Wolff v. McDonnell*, 418 U.S. 539, 557–558, 94 S.Ct. 2963, 2975–2976, 41 L.Ed.2d 935 (1974). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). When a government agency knows that its action will deprive an individual of a property right, the agency must notify that person prior to the deprivation. The notice must include statements "reasonably calculated" to inform the private person of the availability of a process by which he might contest the proposed government action. *See Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978).

■ Eisen received notice from his employer informing him of his right to seek redress at either an arbitration or an administrative hearing. Eisen does not challenge the notice of employer's grounds for discharge as inadequate. He also does not assert that the arbitrator was incompetent

or partial toward employer in any way. (Indeed, the arbitrator had been a longtime representative of a different union, subsequently a state labor conciliator, and, in recent years, a neutral arbitrator in labor relations disputes.) The arbitrator's decision, which was based upon the record, provided Eisen with a statement of the arbitrator's reasons for the decision. Eisen had ample opportunity to present evidence and witnesses on his behalf. Although Eisen was given these procedural safeguards at his arbitration hearing, the question remains whether the absence of an attorney, a hearing transcript, and a speedy hearing resulted in a violation of Eisen's minimum due process rights.

Under the Uniform Arbitration Act, Minn.Stat. § 572.13 (1982),[2] a "party" is entitled to have an attorney present at an arbitration hearing. However, since the Uniform Act fails to define a "party" for purposes of section 572.13, the collective bargaining agreement must be consulted. As we previously noted, Eisen was not a named "party" under the grievance procedures of the agreement. Thus, under the Uniform Act, Eisen had no right to representation by an attorney at the hearing; he was, however, represented by a skilled union representative, the common form of representation in labor relations controversies. Accordingly, Eisen's due process rights were not violated by lack of legal representation.

■ With respect to Eisen's alleged right to have a transcript of the arbitration hearing, the Uniform Act and the collective bargaining agreement do not provide for an individual employee, apart from the union, to request a transcript. The making of a transcript is not a common practice in labor arbitration, although, absent an agreement for it, a party may make inde-

pendent provisions therefor. Of course, if Eisen felt that the union breached its duty to fairly represent him by not ordering a transcript he could have directly sued the union. We conclude that Eisen's due process rights were not violated by lack of a hearing transcript.

■ The remaining constitutional due process issue is whether the post-termination arbitration hearing was timely. The United States Supreme Court has acknowledged that the timing and nature of the required hearing "will depend on appropriate accommodation of the competing interests involved." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982) (quoting *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975)). Competing interests include the importance of the private concern, the finality of the deprivation, the likelihood of government error, and the magnitude of the governmental interests involved. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The court must weigh competing interests to determine if, under the facts, the 15-month time span between discharge and the arbitration hearing met the fundamental requirement of due process—that is, the opportunity to be heard "at a meaningful time and in a meaningful manner."[3]

■ Eisen's private interest, which the union sought to protect on his behalf, was his employment. The trial court correctly stated that the interest of a state employee in retaining his job absent proof of "just cause" for his dismissal is substantial. An employee's need to be assured of proper fact finding is undoubtedly more important

---

2. Minn.Stat. § 572.13.(1982) provides:

A party has the right to be represented by an attorney at any proceeding or hearing under sections 572.08 to 572.30. A waiver thereof prior to the proceeding or hearing is ineffective.

3. The union acknowledged that the 15-month delay was due, in part, to lack of personnel to

process the grievance in a more timely manner. If such delays were to be recurring, the union, by hiring additional staff, would avoid claims that it breached its duty of fair representation by failing to provide an opportunity for a grievant to be heard "at a meaningful time and in a meaningful manner."

when an employee faces discharge rather than some lesser form of discipline. However, because Eisen's discharge was submitted to binding arbitration before a neutral arbitrator, who issued findings, conclusions, an opinion, and award, the likelihood of error was slight. Moreover, because the union was given an opportunity to appeal the arbitrator's award under the Uniform Act, Eisen had a means of further redress against the union if he felt that the union had breached its duty to fairly represent him by not appealing. Governmental interest is the strong public policy favoring arbitration as a generally speedy, informal, and relatively inexpensive procedure for dispute resolution. *See Ramsey County v. AFSCME, Council 91, Local 8,* 309 N.W.2d 785, 789 (Minn.1981).

There was no evidence that the 15-month delay prejudiced Eisen in any way. As stated in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the crucial factor in finding that the delay in the post-termination hearing did not prejudice Eisen is that, had Eisen prevailed, he would have been entitled to full backpay and benefits. There is also no reason to assume that if Eisen had litigated the dispute that the matter would have been heard sooner than it was in arbitration. Thus we conclude, balancing all of the interests, that the 15-month lapse between Eisen's discharge and his arbitration hearing did not violate his constitutional due process right to a hearing "at a meaningful time and in a meaningful manner."

■ 3. The trial court also based its vacation of the arbitration award upon alleged "misconduct" under the Uniform Act, Minn.Stat. § 572.19, subd. 1(2) (1982),[4] citing the arbitrator's failure to provide a taped recording of the hearing after it was requested by Eisen's attorney. The employer argues that the taped recording was, as the arbitrator had consistently

maintained, merely an extension of the arbitrator's personal notes, not an official transcript or recording of the hearing. We agree, particularly because neither the union nor employer requested that a transcript or taped recording be made of the hearing. Moreover, when Eisen's attorney requested the recording taped by the arbitrator, she did not state that she represented Eisen and did not state her reasons for wanting the recording. Without such identification, the arbitrator was justified in denying the attorney's request for the taped recording of the hearing. The trial court erred in ruling that the erasing of the recording in the normal course of business was misconduct.

Reversed.

---

4. Minn.Stat. § 572.19, provides in pertinent part:

Subdivision 1. Upon application of a party, the court shall vacate an award where:

\* \* \* \* \* \*

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party.

