LAZARIO RUIZ, Appellant, *v.*
CITY OF NORTH LAS VEGAS, Respondent.

No. 54762

May 19, 2011                                    255 P.3d 216

[Rehearing denied July 13, 2011]

*Law Office of Daniel Marks* and *Adam Levine* and *Daniel Marks*, Las Vegas, for Appellant.

*Nicholas G. Vaskov*, Acting City Attorney, *L. Steven Demaree*, Chief Deputy City Attorney, and *Chris Davis*, Deputy City Attorney, North Las Vegas, for Respondent.

Before DOUGLAS, C.J., PICKERING and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we address whether an individual peace officer, rather than the union to which he belongs and which pursued arbitration on his behalf, may seek judicial relief from the binding arbitration decision that ensued. While we recognize that the peace officer was not a ''party'' to the arbitration proceeding able to

challenge the decision under Nevada's arbitration laws and that a union generally cannot assign its collectively bargained-for rights to challenge an arbitration decision to an individual officer, we conclude that NRS 289.120, which allows an aggrieved peace officer to seek judicial relief for violations of the Peace Officer Bill of Rights, confers standing in such a circumstance. As we also conclude that the peace officer here met the prerequisites for proceeding under NRS 289.120 by grieving the alleged violations internally and under the collective bargaining agreement, we reverse the district court's order dismissing the officer's petition to vacate the arbitrator's decision.

## FACTS

Appellant Lazario Ruiz was employed by respondent, the City of North Las Vegas (the City), as a police officer with the North Las Vegas Police Department (NLVPD). Ruiz was a member of the North Las Vegas Police Officers Association (the Union), a police officers' union with which the City had a collective bargaining agreement (CBA). Under the CBA, the City and the Union agreed to abide by a series of internal grievance procedures in the event that a Union member was terminated from his or her employment. The CBA first required the aggrieved employee to present a written complaint to the Union Grievance Committee. If the Committee determined that a genuine grievance existed, then the Union was required to present the written complaint to the employee's Department Chief, at which point the Department Chief had ten days to respond. If the Union found the Department Chief's response to be unacceptable, the Union was then required to submit the grievance to the City Manager. If the Union and the City Manager were unable to reach a mutually satisfactory settlement of the grievance, the CBA provided that "the Union [but not the Union member] shall have the right" to submit the matter to binding arbitration.

While off duty, Officer Ruiz witnessed an altercation between his brother and his brother's business partner. During NLVPD's response to what it believed may have been a robbery, Officer Ruiz was interviewed by a superior officer concerning the altercation. Officer Ruiz was then directed to report to NLVPD headquarters, where a further interview was conducted. Without his knowledge or consent, Officer Ruiz's second interview was observed by one of NLVPD's Internal Affairs officers.

Based upon what it perceived to be a lack of truthfulness in Officer Ruiz's interview statements and unprofessional conduct on his part, NLVPD terminated Ruiz's employment. Following Ruiz's termination, and pursuant to the CBA, the Union filed a grievance on his behalf with the City. The grievance was based largely on al-

leged violations of the Peace Officer Bill of Rights, codified at NRS 289.010-.120, which requires a police officer's employer to abide by certain procedural safeguards when conducting an internal investigation.[1] In particular, the grievance stated the following:

> The specific grounds for Officer Ruiz's and the [Union's] collective grievance is based on the due process violation Officer Ruiz suffered during the Department's investigation of an alleged robbery . . . . During such an investigation, it is believed that the Department effectively violated his rights guaranteed to him under the [Peace] Officer Bill of Rights—specifically NRS sections—289.057, 289.060, and 289.080.

The Union's grievance went on to assert several specific violations of Ruiz's rights resulting from his questioning about the alleged robbery, concluding with the following statement:

> [T]he [Union] believes that the rights of Officer Ruiz have been violated and the severe discipline imposed should be stricken. Further, it is the [Union's] belief and assertion that such information gained in violation of NRS Chapter 289, will be barred from admission in any subsequent judicial or arbitration hearing as it is prejudicial to Officer Ruiz and prohibited under NRS 289.085.[2]

The City denied Ruiz's grievance, concluding, with respect to the alleged Peace Officer Rights violations, that Ruiz's "allegations of procedural misconduct [did not] have merit." In light of the City's denial of Ruiz's grievance, the Union submitted the matter to arbitration pursuant to the CBA. Although the overarching premise of the Union's argument to the arbitrator was that Ruiz had been terminated without just cause, the Union also filed a motion in limine, seeking to exclude statements made by Ruiz that were allegedly obtained in violation of his Peace Officer Rights.

Without ruling definitively on the Union's motion in limine, the arbitrator entertained the substance of both parties' arguments, which included evidence that the Union had sought to exclude. After the hearing, the arbitrator concluded that NLVPD had just cause to terminate Ruiz. Not reaching the merits of all of Ruiz's arguments as to the Peace Officer Bill of Rights, the arbitrator determined that NLVPD had not commenced an official internal in-

---

[1] For example, NRS 289.060(1) mandates that "not later than 48 hours before any interrogation or hearing is held relating to an investigation," the peace officer's employer must "provide written notice to the peace officer" of the interrogation or hearing. Similarly, NRS 289.060(3)(c) requires an interrogating officer to "[l]imit the scope of the questions during the interrogation or hearing to the alleged misconduct of the peace officer." The Union's grievance alleged that NLVPD had violated these two requirements.

[2] NRS 289.085 requires courts and arbitrators to exclude evidence obtained in violation of the Peace Officer Bill of Rights in specific circumstances.

vestigation of Ruiz at the time he made his statements and, consequently, any rights that Ruiz had under the Peace Officer Bill of Rights were not triggered.

The Union then assigned to Ruiz its right to challenge the arbitration decision, and Ruiz individually petitioned the district court to vacate the arbitration decision and to remand the matter for a new arbitration proceeding. Subsequently, the City filed a motion to dismiss, arguing that Ruiz lacked standing to file the petition because he was a nonparty to the arbitration proceeding. The district court agreed and granted the City's motion, further concluding that the right to challenge the arbitration decision was not assignable and that Ruiz had not met the prerequisites to sue under the Peace Officer Bill of Rights. This appeal followed.

## DISCUSSION

On appeal, Ruiz presents three arguments as to why he had standing to individually petition the district court to vacate the arbitration decision: (1) under Nevada's Uniform Arbitration Act, he was a "party" to the arbitration proceeding capable of challenging the arbitration decision in district court; (2) the Union effectively assigned to him its rights under the CBA to pursue further dispute resolution; and (3) NRS 289.120 statutorily confers standing on aggrieved peace officers to seek judicial relief from Peace Officer Bill of Rights violations.[3]

Because the CBA's express language limited arbitration rights to the Union, we conclude that Ruiz was not a "party" to the arbitration proceeding for purposes of appealing the arbitration decision pursuant to Nevada's Uniform Arbitration Act. We also conclude that the Union's assignment of its rights to Ruiz was ineffective, as the CBA did not expressly permit such assignments and because otherwise permitting such assignments could have the effect of materially increasing the City's bargained-for obligations under the CBA. However, we conclude that Ruiz had standing under NRS 289.120 to seek relief in district court. Since NRS 289.120 confers standing upon an aggrieved peace officer, we then address the district court's determination that Ruiz failed to meet the statute's prerequisites to judicial review, and we conclude that the district court viewed those prerequisites too narrowly.

---

[3]Ruiz also contends that NRS 288.140(2) permits him to seek judicial relief separate and apart from any relief that might be available to him through the Union's CBA. We conclude that this argument lacks merit, as it is belied by the plain language of the statute. NRS 288.140(2) permits a government employee who has chosen *not* to become a union member to act on his or her own behalf in pursuing an employment-based grievance. The statute does not permit a union member to seek judicial relief in the event that he or she is unsatisfied with the outcome of CBA-negotiated grievance procedures.

*Standard of review*

Whether standing exists is a question of law subject to our de novo review. *See Delaware Valley Surgical v. Johnson & Johnson*, 523 F.3d 1116, 1119 (9th Cir. 2008); *Mid-Hudson Catskill Ministry v. Fine Host*, 418 F.3d 168, 173 (2d Cir. 2005); *Citizens for Cold Springs v. City of Reno*, 125 Nev. 625, 629-32, 218 P.3d 847, 850-51 (2009) (applying de novo review in deciding upon whom a statute conferred standing).

*Ruiz was not a "party" to the arbitration proceeding*

Ruiz's first argument is based on his interpretation of a provision in the Uniform Arbitration Act (UAA), which provides that, "[u]pon motion to the court *by a party to an arbitral proceeding*, the court shall vacate an award made in the arbitral proceeding if: [one of several grounds is applicable]."[4] NRS 38.241 (emphasis added). In short, Ruiz argues that because the Union pursued the grievance and subsequent arbitration on his behalf, he should be deemed a "party" to the proceedings capable of challenging the decision in district court under the UAA. For the following reasons, we reject Ruiz's argument.

The issue of whether an individual employee has standing as a "party" to challenge a decision made in an arbitration proceeding between his union and his employer has never been addressed by this court. While we often look to other jurisdictions for guidance in such situations, the need to do so here is of particular importance: "In applying and construing [the UAA], consideration *must* be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." NRS 38.248 (emphasis added); *see also Karcher Firestopping v. Meadow Valley Contr.*, 125 Nev. 111, 113-16, 204 P.3d 1262, 1263-65 (2009) (looking to other jurisdictions' interpretations of a UAA provision when interpreting an analogous provision in Nevada's UAA).

Generally, other jurisdictions that have adopted the UAA have held that an individual employee does not have standing as a "party" to challenge an arbitration decision rendered in a proceeding between the employee's union and his or her employer. *See, e.g., Eisen v. State, Dept. of Public Welfare*, 352 N.W.2d 731, 736 (Minn. 1984); *Stahulak v. City of Chicago*, 703 N.E.2d 44, 46 (Ill. 1998); *Miller v. Board of Regents of Higher Educ.*, 541 N.E.2d 989, 992-93 (Mass. 1989).

---

[4]In 2001, Nevada adopted the Uniform Arbitration Act of 2000, codified in NRS 38.206-.248. *See* NRS 38.206; 2001 Nev. Stat., ch. 280, § 1, at 1274.

We find the analysis of the Minnesota Supreme Court in *Eisen* to be particularly instructive. In *Eisen*, the court addressed the exact question before this court: "whether [an individual employee] was a 'party' to the arbitration hearing for purposes of appeal under the Uniform Arbitration Act," as enacted in Minnesota. 352 N.W.2d at 733. The court first recognized that Minnesota's UAA failed to define "party" for purposes of grievance appeals. *Id.* at 734. As such, it then looked to the CBA to determine whether the individual employee could be considered a "party." *Id.* at 734-35. Determining that an individual employee was not a "party" under the CBA, the court stated the following:

> The agreement, by express terms, permitted the union, not the employee, to invoke the arbitration provisions of the agreement. The only parties named in the agreement under the arbitration provision were the union and the state negotiator, who, respectively, represent the employee and the employer in hearings before arbitrators selected by both parties.

*Id.* The court concluded that "unless the collective bargaining agreement provides otherwise, an individual employee may not appeal an unfavorable award where the union expressly determines not to appeal." *Id.* at 736.

Such is the case here. Neither Nevada's UAA nor the CBA between the Union and the City defines "party" to include individual Union members. In fact, the CBA specifically states that "[t]his Agreement is made . . . by and between the City . . . and the [Union]." Moreover, the "Grievance and Arbitration Procedure" set forth in the CBA clearly provides that the Union is the "party" responsible for filing a grievance and pursuing arbitration.[5]

Because the CBA expressly states that the Union is responsible for pursuing an employee's grievance up to and including arbitration, we conclude that Ruiz was not a "party" to the arbitration proceeding. Our conclusion also comports with the restrictive view this court has taken in previous cases in which we have been asked to stretch the boundaries of the term "party." *See, e.g.*, *Valley Bank of Nevada v. Ginsburg*, 110 Nev. 440, 446, 874 P.2d 729, 734 (1994) ("This court has consistently taken a restrictive view of those persons or entities that have standing to appeal as parties."); *Garaventa Co. v. Dist. Court*, 61 Nev. 350, 353-54, 128 P.2d 266, 267-68 (1942) (holding that a corporation did not have standing to appeal an adverse judgment because it was not a named party in the underlying lawsuit). Consequently, we conclude that

---

[5]The CBA states that "[t]he Union recognizes its responsibility as bargaining agent and agrees to fairly represent all employees in the bargaining unit."

the district court correctly determined that Ruiz lacked standing under NRS 38.241 as a "party" to the arbitration proceeding.[6]

### The Union could not assign its rights to Ruiz

Ruiz next contends that the Union assigned to him its rights under the CBA to further pursue his grievance and that, included within the assigned rights was the ability to challenge the arbitration decision in district court. It is undisputed that the Union attempted to assign its rights to Ruiz. The district court, however, concluded that the rights were not assignable, because to permit such assignments would violate public policy. As explained below, we agree with the district court's rationale, because enabling the assignment of certain CBA rights would undermine the entire purpose for union representation and collective bargaining.

As a general matter, collective bargaining agreements are contractual by nature. 20 Richard A. Lord, *Williston on Contracts* § 55:3 (4th ed. 2001). A union, acting under the authority conferred upon it by all its members, enters into a contract with the members' employer in which both union and employer agree to abide by certain rules and procedures. Indeed, the CBA at issue here expressly states what is obviously necessary in this three-way relationship: "[t]he Union recognizes its responsibility as bargaining agent and agrees to fairly represent all employees in the bargaining unit." *See* NRS 288.160(2) (granting status of "exclusive bargaining agent" to any union that represents a majority of the employees in a particular bargaining unit—*e.g.*, nonsupervisory peace officers employed by the City of North Las Vegas).

Given the contractual relationship that a CBA creates between the union and the employer, the assignability of the union's rights is appropriately analyzed under traditional principles of contract law. While we recognize the general rule that contracts are freely assignable in the absence of language to the contrary, an assignment that has the effect of increasing the nonassigning party's ob-

---

[6]Although an employee generally will not be considered a "party" to an arbitration proceeding capable of challenging the arbitrator's decision in court, we note that such an aggrieved employee is not wholly without recourse. If the employee can demonstrate that the union has violated its duty of fair representation in handling the employee's grievance, the employee may have a cause of action against his or her union. *Rosequist v. Int'l Ass'n of Firefighters*, 118 Nev. 444, 448-49, 49 P.3d 651, 653-54 (2002) (holding that a union member seeking to challenge whether his union fulfilled its duty of fair representation must file a claim with Nevada's Employee-Management Relations Board), *abrogated on other grounds by Allstate Ins. Co. v. Thorpe*, 123 Nev. 565, 170 P.3d 989 (2007).

ligations or risks under the contract is prohibited. *HD Supply Facilities Maint. v. Bymoen*, 125 Nev. 200, 204, 210 P.3d 183, 186 (2009) (''[T]he basic policy in the law of contractual assignments [is to] honor[ ] an obligor's choice to contract with only the original obligee, thereby ensuring that the obligor is not compelled to perform more than his or her original obligation.''); Restatement (Second) of Contracts § 317(2)(a) (1979) (''A contractual right can be assigned unless . . . the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract . . . .'').

With this in mind, we conclude that the Union could not assign to its members the right to challenge an arbitration decision. Nothing in the CBA permits the Union to do so, and assigning to its members the right to seek judicial relief would impose an additional burden on the City, potentially requiring it to expend additional time, money, and resources on litigating an arbitration decision that it had thought would be binding. We conclude that an assignment by the Union of the right to appeal an arbitration decision would materially increase the City's obligations under the CBA. Thus, unless a CBA expressly permits assignment of rights to a union member, we conclude that such an assignment is invalid. *See Dillman v. Town of Hooksett*, 898 A.2d 505, 508 (N.H. 2006) (recognizing that allowing unions to assign their litigation rights under a CBA would undermine the purposes behind collective bargaining laws and thereby violate public policy by potentially requiring the employer to deal directly with numerous individuals—as opposed to their exclusive representative—with varying merit to their complaints, subjecting the employer to greater demand on its public resources than contemplated during negotiations and allowing the union to avoid liability to its members).

*Ruiz has standing under NRS 289.120 to seek judicial relief*

Ruiz's final argument is that the Peace Officer Bill of Rights statutorily grants individual peace officers standing to challenge an arbitration decision that determines whether violations of those rights occurred. Specifically, he points to NRS 289.120, which governs judicial relief regarding Peace Officer Rights violations:

> Any peace officer aggrieved by an action of the employer of the peace officer in violation of [the Peace Officer Bill of Rights] may, after exhausting any applicable internal grievance procedures, grievance procedures negotiated pursuant to [collective bargaining] and other administrative remedies, apply to

the district court for judicial relief. If the court determines that the employer has violated a provision of this chapter, the court shall order appropriate injunctive or other extraordinary relief to prevent the further occurrence of the violation and the taking of any reprisal or retaliatory action by the employer against the peace officer.

Ruiz contends that NRS 289.120 grants him standing to individually challenge the arbitration decision because the decision upheld his termination that was based upon information allegedly obtained in violation of his Peace Officer Rights. We agree. Assuming that Ruiz "exhausted" any applicable internal or CBA-negotiated grievance procedures, NRS 289.120's plain language grants Ruiz the right to challenge the arbitration decision in district court.

The City contends, however, that Ruiz has not exhausted the CBA-negotiated grievance procedures. Based on the fact that the only question presented to the arbitrator was whether Ruiz had been terminated without just cause, the City maintains that any ancillary questions that might form the basis for this main question were not sufficiently "grieved" through each of the CBA's grievance steps. In granting the City's motion to dismiss Ruiz's petition, the district court agreed with the City's rationale, "reject[ing] Ruiz's assertion that the fact that his firing was grieved *de facto* encompassed all of his grievable issues, including alleged violations of NRS Chapter 289."

We disagree with the district court's conclusion that a grievance that generically alleges an employee's wrongful termination cannot also encompass specific grievable issues related to the employee's Peace Officer Rights. In its initial grievance, the Union alleged four specific violations of Ruiz's Peace Officer Rights, the most notable of which was the allegation that Ruiz was not provided with any notice that he was going to be questioned about the alleged robbery.[7] Upon submitting the grievance to the arbitrator, the Union again made clear that improper reliance on information obtained in violation of Ruiz's rights contributed to NLVPD's deci-

---

[7] The Union's grievance expressly alleged that NLVPD had violated NRS 289.060(1)'s requirement that an officer be given 48 hours' notice prior to being interrogated:

> Failure to provide Officer Ruiz at least 48 hours notice prior to questioning by any fellow law enforcement official in regards to any complaint or allegation that Officer Ruiz was engaged in activities which could result in punitive action (e.g. an internal complaint of Unprofessional Conduct) as, according to the Department's own internal documents, Officer Ruiz was not considered a suspect at the time of the contact or initial interview[.]

sion to terminate Ruiz's employment. At both stages in the grievance process, the Union's argument rested upon the alleged Peace Officer Bill of Rights violations. We reject the City's argument that Ruiz did not grieve these particular issues simply because NLVPD and the arbitrator failed to give them ample consideration throughout the grievance process.

Moreover, we note that an aggrieved peace officer would rarely, if ever, have occasion to complain that his or her rights were violated when such violation did not result in some sort of significant discipline. In many cases, if the rights violation never leads to further disciplinary action, the peace officer would have little motivation to request that his or her union seek arbitration. Most CBAs have a screening process to prevent grievances with no risk of disciplinary action from reaching the arbitration stage.[8] With this in mind, we consider it unlikely that a Peace Officer Bill of Rights violation, grieved in the abstract, would reach the arbitration stage on its own. Accordingly, we conclude that Ruiz has exhausted the applicable internal grievance procedures required by NRS 289.120 and that he therefore has standing to challenge the arbitration decision in district court.[9]

---

[8]*See* Alan Miles Ruben, *How Arbitration Works* 198-202 (6th ed. 2003) (explaining that an effective collective bargaining agreement will have in place preliminary procedures to dispose of inconsequential grievances well before they reach the arbitration stage). The CBA at issue in this case provides a similar procedure: Step 1 of the ''Grievance Procedure'' requires the Union Grievance Committee to review an employee's complaint, and only ''[i]f it is determined by the Union Grievance Committee that a grievance does exist'' shall the Union then proceed to Step 2 and present the grievance to the employee's Department Chief.

[9]The City also contends that NRS 289.120 only permits the district court to grant *prospective* relief—*i.e.*, to enjoin a peace officer's employer from engaging in future rights violations. Construing the statute in such a manner, however, would produce an absurd result. *California Commercial v. Amedeo Vegas I*, 119 Nev. 143, 145, 67 P.3d 328, 330 (2003) (''[W]e are not empowered to construe the statute beyond its plain meaning, unless the law as stated would yield an absurd result.'').

The issues raised in this case provide an apt example: Ruiz was terminated from his job pursuant to an arbitration decision that was based, in part, on evidence allegedly obtained through prohibited interrogations. Enjoining his employer from wrongfully interrogating him in the future provides him with no relief under the statute. If Ruiz's allegations are true, he has already been improperly interrogated, has been terminated, and must deal with his tarnished record when looking for new employment.

Simply put, the Peace Officer Bill of Rights represents the Nevada Legislature's recognition that peace officers, because of the important role they play in maintaining public safety, deserve additional protections that are unavailable to other public employees. *See* Hearing on A.B. 458 Before the Assembly Judiciary Comm., 62d Leg. (Nev., Apr. 12, 1983) (discussing whether peace officers, because of the ''position of trust that they hold,'' should instead be ''held to a higher standard than the average citizen'' rather than receive additional procedural rights); Hearing on A.B. 458 Before the Assembly Judiciary

We therefore reverse the judgment of the district court and remand this matter to the district court for further proceedings consistent with the provisions of NRS 289.120.

DOUGLAS, C.J., and PICKERING, J., concur.

---

Comm., 62d Leg. (Nev., May 11, 1983) (questioning why peace officers deserve rights that are not afforded to other state employees); *see also* Kevin M. Keenan & Samuel Walker, *An Impediment to Police Accountability? An Analysis of Statutory Law Enforcement Officers' Bills of Rights*, 14 B.U. Pub. Int. L.J. 185, 185-87 (2005) (discussing the public-policy considerations behind granting peace officers additional protections that "[n]o other group of public employees enjoys").

When our Legislature enacts statutes purporting to grant a group of people certain rights, we will construe the statutes in a manner consistent with the enforceability of those rights. *See Torrealba v. Kesmetis*, 124 Nev. 95, 101, 178 P.3d 716, 721 (2008) ("[I]t is the duty of this court, when possible, to interpret provisions within a common statutory scheme harmoniously with one another in accordance with the general purpose of those statutes and to avoid unreasonable or absurd results, thereby giving effect to the Legislature's intent." (internal quotations omitted)). Accordingly, we conclude that the district court is not limited to granting prospective relief under NRS 289.120.