Rodney TCHIDA, Appellant,

v.

POLICE OFFICERS' FEDERATION
OF MINNEAPOLIS, Respondent.

No. C6–85–894.

Court of Appeals of Minnesota.

Oct. 22, 1985.

Review Denied Dec. 30, 1985.

Joseph L. Daly, Rosemary Kassekert, Leo M. Daly, St. Paul, for appellant.

James C. O'Neill, St. Paul, for respondent.

Roger A. Peterson, Ronald G. Marks, Minneapolis, for amicus curiae American Federation of Labor-Congress of Indus. Organizations.

Jeffrey W. Jacobs, Minneapolis, for amicus curiae Teamsters Public and Law Enforcement Employees Union Local No. 320.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

Appellant, police officer Rodney Tchida, appeals from a district court entry of judgment notwithstanding the verdict. The jury found that respondent, the Police Officers' Federation of Minneapolis (Federation), breached a duty of fair representation and the jury awarded him approximately $20,000.00 in damages representing Tchida's private attorney fees. The trial court then ruled that the verdict was not supported by the evidence, granted JNOV, and awarded the Federation $435.38 in costs.

Tchida appeals from the JNOV and the assessment of costs. We affirm.

## FACTS

On February 27, 1981, Tchida's superior officer confiscated a Shriner's ring worn by Tchida on suspicion that Tchida had converted it during the execution of a search warrant at a private residence. Tchida had participated in the execution of a search warrant at the residence of Michael Artis, along with approximately ten Minneapolis police officers and federal agents, on January 30, 1980. About thirteen months later, Artis claimed that a Shriner's ring was missing from his home.

Between February 27 and March 23, 1981, the Internal Affairs Division of the Minneapolis Police Department investigated the matter. On March 23, Deputy Chief Jablonski, based on the investigation, asked for Tchida's resignation. Tchida declined to resign and met with Officer Seliski, the Federation president, that day. Sergeant O'Brien, the Federation's secretary was also present. Tchida told them the details of his conference with Jablonski and gave his version of the circumstances surrounding his possession of a Shriner ring.

Tchida, an Indian, claimed he had obtained the ring from an acquaintance, Joe LaFrombois. Tchida stated that on February 11, 1981, during a visit to the Sisseton-Wahpeton Reservation in South Dakota, he lent $50 to LaFrombois. Tchida said that LaFrombois gave Tchida a Shriner's ring to hold as collateral until the $50 was repaid. It is not disputed that such a practice is common among Indians, however, LaFrombois was never found to confirm or deny the story. Tchida said he put the ring in the glove compartment of his car and forgot about it until February 23, 1981, when he wore it to work.

Tchida asked Seliski whether the Federation would provide him with an attorney. Seliski said that the Federation would not. At some later point, before Tchida's disciplinary hearing, Seliski again refused Tchida's request for a Federation-paid attorney, claiming that an attorney would be a waste of money at a disciplinary hearing. Seliski said that the Federation would represent Tchida.

On April 21, 1981, Tchida received notice of a formal departmental internal affairs disciplinary hearing set for April 29. By this time, three jurisdictions had declined to pursue criminal charges against Tchida for the alleged theft. On April 24, Seliski wrote to Chief Bouza objecting to the appointment of Jablonski as hearing examiner at the disciplinary hearing. Tchida claimed that the Federation undertook no investigation of the facts of the case. Tchida, on his own, hired attorney James Redman on April 27 to represent him. Redman spent the time remaining before the hearing conferring with Tchida and reviewing the records of the matter. At the same time, a friend offered to help investigate the matter, and spent one-half day attempting to locate LaFrombois.

The disciplinary hearing lasted two days. Redman and Seliski both appeared on Tchida's behalf. Both Redman and Seliski made objections and cross-examined witnesses. O'Brien substituted for Seliski the morning of the second day of the hearing. Seliski elicited an admission from the jeweler who made the ring for Artis' father that anyone could order from a jeweler a ring that looked just like the subject ring. Seliski also brought out the fact that the jeweler could not positively identify the subject ring as the stolen one.

The hearing examiner recommended to Bouza that he discharge Tchida. Bouza recommended to the Civil Service Commission that Tchida be discharged. At this point Tchida could have filed a grievance under the collective bargaining agreement or appealed to the Civil Service Commission, or (as a veteran) appealed to the Civil Service Commission under the Veteran's Preference Act. Tchida chose to go before the Civil Service Commission.

Before the commission hearing, an attorney associate of Redman's investigated and discovered that the type of ring involved was not unique. A Shriner's ring is distinctive but not "one of a kind." He testified to this effect before the Civil Service Commission. The commission rejected the recommendation of discharge. After exoneration by the commission, Tchida sued the Federation for his attorney fees.

The Federation is an independent union with just under 700 members. It has bargained over procedural aspects of the disciplinary hearings. In the early 1960's employees were not entitled to any kind of hearing prior to the imposition of discipline. The Federation, as of 1981, had bargained for the right to a signed statement against the employee, the right to confront witnesses, the right to have an attorney present and cross-examine, and the right to have a Federation representative present.

The Federation also has bargained for and obtained a typical four-step grievance arbitration procedure. Had Tchida chosen the four-step procedure, the Federation would have been bound to provide fair representation throughout arbitration.

Tchida sued the Federation for breach of its duty of fair representation, claiming that the investigation was inadequate and that he should have been provided with a lawyer. He claimed as damages all his attorney fees, from the time he hired Redman just before the disciplinary hearing, through the civil trial.

The jury returned a special verdict for Tchida, finding that the Federation breached its duty of fair representation, the breach of the duty directly caused the dam-

ages incurred by Tchida, and that Tchida was entitled to recover $19,185.35 from the Federation. The Federation's motion for judgment notwithstanding the verdict (JNOV) was granted, and the court entered an amended judgment awarding the Federation $495.53 for its costs and disbursements. Tchida appeals from the order granting the JNOV and the amended judgment.

## ISSUES

1. Did the trial court err in granting judgment notwithstanding the verdict?

2. Did the trial court err in awarding the Federation $495.53 for its costs and disbursements?

## ANALYSIS

### I.

*Judgment notwithstanding the verdict*

The duty of an exclusive bargaining representative to represent fairly individual employees has existed under federal labor law since 1944. *Steele v. Louisville & N.R.R.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The Minnesota Supreme Court recognized the duty under the Public Employment Labor Relations Act (PELRA) in *Eisen v. Minnesota Department of Welfare*, 352 N.W.2d 731, 735 (Minn.1984). There, the court applied federal case law defining the duty of fair representation. Thus, Minnesota courts can look to federal labor law in developing this state's law of fair representation.

We must determine what the Federation's duties were towards Tchida at the disciplinary hearing. The district court stated that the duty of fair representation did apply at the disciplinary hearing. However, the judge found that as a matter of law the evidence did not support the verdict and granted JNOV in favor of the Federation.

■ We reach the same result in affirming the trial court, but for different reasons. We hold that the duty of fair repre-

sentation applies only to matters where the union serves as the *exclusive* representative, and thus there was no duty of fair representation for the Federation to breach at Tchida's departmental disciplinary hearing.

The Minnesota Supreme Court stated the rationale behind the duty of fair representation:

> The judicially created doctrine of a duty of fair representation is derived from a union's statutory right to act as the exclusive bargaining representative of all employees in a designated bargaining unit.

*Eisen,* 352 N.W.2d at 735. If the union is not the exclusive representative, the rationale for the duty does not apply.

The Seventh Circuit applied this reasoning in *Freeman v. Local Union No. 135 Chauffeurs, Teamsters, Warehousemen and Helpers,* 746 F.2d 1316, 1321 (7th Cir. 1984). It held that a union had no duty to ask a court to vacate an arbitrator's award denying a grievance over wrongful discharge. The court reasoned

> A union's statutory duty of fair representation is coextensive with its authority under § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a) to act as the exclusive representative for the members of the collective bargaining unit. * * * The scope of the duty of fair representation, however, extends no further. If a union does not serve as the exclusive agent for the members of the bargaining unit with respect to a particular matter, there is no corresponding duty of fair representation. * * * "[A] union * * * can be held to represent employees *unfairly* only in regard to those matters as to which it represents them at all—namely, 'rates of pay, wages, hours ... or other conditions of employment.'" *International Brotherhood of Teamsters, Local N. 310 v. NLRB,* 587 F.2d 1176, 1183 (D.C.Cir. 1978) (quoting 29 U.S.C. § 159(a)).

746 F.2d at 1320–21 (citations and footnotes omitted) (emphasis in original). Because the collective bargaining agreement did not give the union the exclusive right to seek judicial review of the award and the employee could have filed the suit himself, the union owed no duty to him. *Id.*

The U.S. Supreme Court has stated:

> [A]s the exclusive bargaining representative ... the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining * * * and in its *enforcement* of the resulting collective bargaining agreement.

*Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967) (citations omitted) (emphasis added). Thus, the duty does not apply if the disciplinary hearing is not a method of enforcing the collective bargaining agreement.

The Federation was not Tchida's exclusive representative at the disciplinary hearing.[1] Tchida was represented by his own attorney, who actively participated in the proceedings, and by himself. The Federation's representative was present pursuant to its contractual rights. However, this does not mean that the Federation was Tchida's *exclusive* representative.

 Tchida argues that because the Federation bargained for discipline procedures, the Federation had a duty to advocate for him at the disciplinary hearing. It is correct that the Federation bargained over different aspects of the disciplinary hearings. The collective bargaining agreement makes the following provisions regarding discipline:

> § 18.1 The City will discipline employees who have completed the required probationary period only for *just cause.*
>
> § 18.2 A suspension, written reprimand, demotion or *discharge of an employee* who has completed the required probationary period *may be appealed through the grievance procedure* as contained in Article 5 of this Agreement. In

---

**1.** The disciplinary hearing was not a grievance hearing. The grievance procedure is not available until something grievable has happened, e.g. discipline has been imposed by the Chief of Police.

the alternative, where applicable, an employee may seek redress through a procedure such as Civil Service, Veteran's Preference, or Fair Employment. Once a written grievance or an appeal has been properly filed or submitted by the employee or on the employee's behalf through the grievance procedure of this Agreement or another available procedure, the employee's right to pursue redress in an alternative forum or manner is terminated.

Additional agreements about discipline were reached, and are part of the collective bargaining agreement because they are past practice.[2] A past president of the Federation testified that the Federation obtained the right to a signed statement against the accused employee, the right to confront witnesses, the right to have an attorney present, the right to have the attorney cross-examine witnesses, and the right to have a Federation representative present.

However, the Federation did not bargain to be the *exclusive* representative or advocate at the departmental disciplinary hearings (as it is throughout the grievance process). It only bargained for certain *procedures* to be followed. The Federation claims its only duty is to ensure that the *procedures* bargained for were followed at the disciplinary hearing. We agree. The Federation did that much. Tchida had a right to be represented by his own attorney, and that attorney had the right to cross-examine and present evidence. The Federation fulfilled its limited duty when those procedural rights were present.

The trial court did not err in granting JNOV. If the verdict is unsupported by the facts in view of the applicable law, JNOV must be affirmed. *Devine v. McLain*, 306 N.W.2d 827 (Minn.1981). Here, the applicable law is that the Federation had no duty of fair representation at Tchida's disciplinary hearing. Therefore, JNOV was appropriate.

Although we affirm the trial court, we note that we disagree with the trial court regarding the grounds for JNOV. The trial court indicated that the Federation had a legal duty of fair representation at the disciplinary hearing, but that the evidence did not support the jury's verdict that it breached this duty. We hold that there was no legal duty of fair representation at the hearing.

■ Finally, even if the Federation had a duty to represent Tchida and advocate for him at the hearing, the record of the hearing does not display such perfunctory, arbitrary, or bad faith conduct by the Federation that a duty of fair representation was breached. *Vaca*, 386 U.S. at 190, 87 S.Ct. at 916; *Hines v. Anchor Motor Freight*, 424 U.S. 554, 558–61, 96 S.Ct. 1048, 1053–54, 47 L.Ed.2d 231 (1976).

II.

*Costs and disbursements.*

■ Tchida appeals the trial court's assessment of $435.38 in costs and disbursements against him. A prevailing party may recover the cost of necessary disbursements. Minn.Stat. § 549.04 (1984). The award of costs and disbursements is within the trial court's discretion and will not be reversed except for an abuse of discretion. *Striebel v. Minn. State High School League*, 321 N.W.2d 400, 403 (1982).

The Federation requested $1,887.13. The trial court allowed only the following items:

| | |
|---|---|
| Statutory costs | $ 10.00 |
| Clerk's filing fee | 30.00 |
| Depositions of Tchida and Seliski | 199.04 |
| Deposition of Gehan | 26.85 |
| Deposition of Redman | 20.69 |
| Second deposition of Tchida | 208.95 |

The trial court "is in the best position to judge what is truly necessary and what is only useful." *Romain v. Pebble Creek Partners*, 310 N.W.2d 118, 124 (Minn.1981). There was no abuse of discretion here. Evidence was presented that Tchida's sec-

---

**2.** Clearly identifiable past practice of the parties to a collective bargaining agreement may be considered part of the parties' agreement even if it is not embodied in the written agreement.

ond deposition was necessitated by Tchida's amended complaint. Nothing in the record indicates trial court error in finding the remaining depositions and costs necessary.

We affirm the award of costs and disbursements.

### DECISION

1. A union's duty of fair representation does not arise at a departmental disciplinary hearing unless the union is the employee's exclusive representative at that hearing. The trial court did not err in granting judgment notwithstanding the verdict.

2. The trial court did not err in its award of costs and disbursements to the Federation.

Affirmed.